**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| SILVIO SOLIS-ALARCON, et al.<br><br>Plaintiffs<br>v.<br><br>UNITED STATES OF AMERICA, et al<br><br>Defendants | Civil No. 05-1987(SEC) |

**OPINION AND ORDER**

Pending before this Court is Plaintiffs' motion for reconsideration (Docket # 137), Special Agents Felton Cameron ("Cameron") and Greg Calam ("Calam")(collectively "Federal Defendants") opposition (Docket # 138), and the subsequent filings (Dockets ## 143, 149, 152, 153, 154 and 155). Upon reviewing the filings, and the applicable law, Plaintiffs' motion for reconsideration is **DENIED.**

**Factual and Procedural Background**

On September 16, 2005, Plaintiffs filed the instant complaint against several federal and state Defendants, asserting the following claims: (1) *Bivens*[1] violations against Cameron and Calam; (2) claims under the Federal Torts Claims Act ("FTCA") against the Drug Enforcement Agency ("DEA"), the Department of Justice ("DOJ"), and the United States; and (3) Section 1983, Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 5141-5142, claims against the state police defendants ("state defendants"). Docket #1 at ¶¶ 25-33. Plaintiffs requested $1,000,000.00 for each Plaintiff for his or her emotional pain and suffering, $5,000,000.00 in punitive damages, costs, interests, and attorney's fees. Id. at ¶¶ 34-37.

According to Plaintiffs, on September 18, 2003, at 5:00 a.m., Special Agents Cameron

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

**Civil No. 05-1987 (SEC)**                                                                                                              2

and Felton, along with other state police defendants, searched their home and belongings without authorization, searched and detained, but did not arrest, Plaintiffs Silvio Solís Alarcón and Migdalia Márquez, and confiscated Plaintiffs' Dodge Durango as it had allegedly been used in a drug transaction. Id. at ¶¶ 13-18.[2]  Per the allegations in the complaint, at the time Defendants carried out the search, they told Plaintiffs that they were looking for a man named Juan Díaz, and Plaintiffs stated they did not know him. Id. at ¶ 17.

Federal Defendants' motion to dismiss was denied by this Court. Docket # 46. However, this Court granted the Federal Defendants' Motion for Summary Judgment, upon finding that they were entitled to qualified immunity. Docket # 118. On September 24, 2008, this Court also dismissed Plaintiffs' FTCA claims against the United States, and all claims against the state defendants. Docket # 135. Plaintiffs now move for reconsideration. Docket # 137.

**Standard of Review**

FED. R. CIV. P. 59(e) allows a party, within ten (10) days of the entry of judgment, to file a motion seeking to alter or amend said judgment. The rule itself does not specify on what grounds the relief sought may be granted, and courts have ample discretion in deciding whether to grant or deny such a motion. Venegas-Hernández v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004) (citations omitted). In exercising that discretion, courts must balance the need for giving finality to judgments with the need to render a just decision. Id. (citing Edward H. Bolin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993)).

Despite the lack of specific guidance by the rule on that point, the First Circuit has stated that a Rule 59(e) motion "must either clearly establish a manifest error of law or must present newly discovered evidence." F.D.I.C. v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992) (citing Fed. Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)).  Rule

---

[2] Plaintiffs' car was later returned to its registered owner, the Banco Bilbao Vizcaya Argentaria. Docket # 1 at ¶ 19).

**Civil No. 05-1987 (SEC)** 3

59(e) may not, however, be used to raise arguments that could and should have been presented before judgment was entered, nor to advance new legal theories. Bogosonian v. Woloohojian Realty Corp., 323 F.3d 55, 72 (1st Cir. 2003).

**Applicable Law and Analysis**

Plaintiffs contest this Court's September 21, 2007 Opinion and Order granting Federal Defendants' Motion for Summary Judgment, and the September 24, 2008 Order dismissing Plaintiffs' FTCA claims, and all claims against the state defendants. In their motion for summary judgment, in essence, Federal Defendants argued that they were entitled to qualified immunity, while Plaintiffs argued that Federal Defendants detained them, and searched their home without authorization. According to this Court's prior opinion, the facts are as follows: On September 18, 2003, a group of agents arrived at Plaintiffs' house on or about 5:30 a.m., in order to execute a warrant for the arrest of Juan Díaz-Suazo ("Díaz-Suazo"). See Dockets # 78-1 ¶ 17, # 91-1, ¶17. Díaz-Suazo was sought by the DEA in connection with an investigation into a drug trafficking organization led by Felix Rafael Egipciaco. See Docket # 78-1, ¶¶ 8-10. Upon entering Plaintiffs' home, the agents inquired whether Plaintiffs knew Díaz-Suazo, and Plaintiffs replied that they did not. Id. at 18. The agents then searched the house for Díaz-Suazo. See Id. at 19, Docket # 91-1 ¶19. Thereafter, the agents seized Plaintiffs' red Dodge Durango, license plate number EBK-373, because it was used in connection with a drug offense. See Docket # 78-1, ¶22. The vehicle was later released. Id.

The DEA agents, along with support from other agencies, sought to execute the warrant for Díaz-Suazo in Plaintiffs' home because they believed him to be residing there. See Id., ¶11. Several months prior to the date of the execution of the arrest warrant, state police agents Roberto Cruz and Pablo Rivera had observed Díaz-Suazo drive a red Dodge Durango, with license plate # EBK-373, to a beauty salon to carry out a drug transaction with Egipciaco. See Id. at ¶¶12, 14. In order to identify the driver of the red Dodge Durango,

**Civil No. 05-1987 (SEC)** 4

another state police agent, Fernando Colón, effected a traffic stop and, upon requesting the driver's license and the license and registration for the vehicle, discovered that the driver was Díaz-Suazo, that his license identified his address as Urb. Villa Fontana 4U-S7, Vía 37, Carolina, P.R. 00982, and that the vehicle was registered to Silvio Solís-Alarcón, with address Urb. Brisas de Canóvanas, Calle Alón, Carolina, P.R. 00985. See Id. at ¶13. Agents Cruz and Rivera later observed Díaz-Suazo drive the car to Alondra St. # 17, Urb. Brisas de Canóvanas, and park it in the garage. Id. at ¶14. Further surveillance showed the same car parked in front of Plaintiffs' home, or at the beauty salon. Id. at ¶¶ 14, 16. The same agents also conducted surveillance on the Urb. Villa Fontana 4U-S7 address, and determined that Díaz-Suazo did not reside there. Id. at ¶14. The information gleaned by the state police agents was passed on to Co-defendant Calam. See Docket # 78-4. Co-defendant Calam, in turn, informed Co-defendant Cameron that Díaz-Suazo's address was Alondra St. # 17, Urb. Brisas de Canóvanas. See Docket # 78-5.

Based on the foregoing facts, this Court concluded that the Federal Defendants' actions were reasonable. Specifically, this Court stated that:

> In this case, Co-defendant Cameron went, along with other officers, to execute the arrest warrant for Díaz-Suazo at the Alondra St. address because he had been told, by another federal agent involved in the investigation, that the arrestee lived there. Co-defendant Calam, in turn, relied on the information provided by state police agents who were also involved in the investigation of the Egipciaco conspiracy and who had carried out surveillance on the arrestee. Because both of the Federal Defendants –agents Calam and Cameron– believed that Díaz-Suazo lived at that Alondra St. address on the basis of what other agents involved in the investigation and who had carried out surveillance of Díaz Suazo had informed them, we conclude that their belief was reasonable. Likewise, because the entry into Plaintiffs' house to execute the arrest warrant was done in the early morning hours, it was also reasonable for Federal Defendants to believe that Díaz-Suazo –who they reasonably believed to be residing there– would be present at the time. See, U.S. v. Thomas, 429 F.3d at 286 (early morning hour gave police reason enough to believe that subject of arrest warrant would be present at the place they reasonably believed to be his residence.)
>
> Co-defendants Calam's and Cameron's reasonable belief that Díaz-Suazo resided at the Alondra St. residence sets the stage for a finding of entitlement to qualified immunity with regards not only to the entry into Plaintiffs' home, but also to the actions subsequent thereto. That after entering Plaintiffs' home the police detained them and conducted some type of search of the premises

**Civil No. 05-1987 (SEC)**                                                                                                5

is consistent with both <u>Michigan v. Summers</u>, 452 U.S. 692 (1981) and <u>Maryland v. Buie</u>, 494 U.S. 325 (1990). After all, the police had arrived at the residence to arrest Díaz-Suazo, a known associate of a drug conspiracy, and although Plaintiffs had told them that Díaz-Suazo did not reside at the house, they did not need to take Plaintiffs' word for it. <u>Cf.</u> <u>U.S. v. Barrera</u>, 464 F.3d at 504 (that brothers of the subject of the arrest warrant and residents at the house in which the police suspected subject resided and was present denied that subject was present within the house "likely raised a 'red flag' that they were 'covering' for their brother and that [he] was likely within the residence.") For the reasons already explained, Defendants believed that Díaz-Suazo resided at that address.

Plaintiffs have not offered any evidence that Defendants remained at the house longer than what was necessary for them to attempt to execute the arrest warrant and "dispel the reasonable suspicion of danger" that accompanied their belief that a known drug associate was present at the house. <u>See</u>, <u>Buie</u>, 494 U.S. at 336; <u>see also</u>, <u>U.S. v. Bervaldi</u>, 226 F.3d at 1268 ("The officers conducted a protective sweep of the entire 129th Avenue residence. To the extent this sweep may have exceeded the area 'immediately adjoining the place of arrest,' we conclude that a reasonably prudent officer could believe, based on the cocked 9 millimeter pistol observed in the dwelling and the reasonable belief that Deridder was in the dwelling, that the house harbored an individual posing a danger sufficient to permit a sweep of its entirety.") (citations omitted). Finally, although Plaintiffs seek to make much of the fact that Defendants entered their house brandishing guns, this does not make out an excessive force claim, nor have Plaintiffs provided any evidence that would lead the Court to conclude that excessive force was indeed used or that there is a genuine issue of material fact as to that point. <u>See</u>, <u>Johnson</u>, 379 F.3d at 305-306 (no use of excessive force where police agents entered with guns drawn, ordered her to lay down, and, when Plaintiff turned around, was advised to turn her head back and lay down or she would be shot).

In their motion for reconsideration, Plaintiffs assert that the state defendants' sworn statements provide conflicting versions of the facts. Specifically, they contend that while Cruz set forth that the drug transaction took place at the Western Auto Store in Plaza Carolina, Rivera stated that it occurred in front of the beauty salon at Villa Fontana, Carolina. However, upon reviewing the documents considered in ruling upon the motion for summary judgment, this Court finds that, according to the state defendants, the drug transaction between Egipciaco and Diaz-Suazo took place in front of the beauty salon. <u>See</u> Dockets ## 78-3, p. 3[3]; 78-11, p. 1. Moreover, albeit Rivera's statement incorrectly states that the

---

[3] In his sworn statement, Cruz stated that although the meeting between Díaz-Suazo and Egipciaco was set to take place at the Western Auto Store, it was eventually carried out in front of the beauty salon.

**Civil No. 05-1987 (SEC)** 6

surveillance was conducted on September 2003, this Court concludes that the foregoing was a clerical error, insofar as Plaintiffs do not contest that the surveillance, and drug transaction, took place on April 2003. As such, their arguments on this front fail. Thus there is no controversy as to the date of the surveillance.

Since Rule 59(e) allows for reconsideration when the moving party clearly establishes a manifest error of law, or newly discovered evidence, the arguments set forth in Plaintiffs' motion for reconsideration are unpersuasive. As previously held by this Court, Federal Defendants acted pursuant to information provided by other team members involved in the investigation of a drug conspiracy, and because those other team members were entrusted with the role of conducting surveillance on the arrestee. Therefore Federal Defendants' reliance on the information they provided was entirely reasonable at the time. See Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 305 (5th Cir. 2004) (officer who relied on information furnished by another officer as to arrestee's address and who had no reason to believe that the information was not correct or that the arrestee was likely not at the house entitled to qualified immunity). Plaintiffs' arguments as to the delay between the surveillance and the search have been considered by this Court, as set forth in the aforementioned facts. Therefore, Plaintiffs cannot rehash issues that were ruled upon by this Court absent new evidence or a showing of manifest error of law.

Finally, upon holding that Federal Defendants' actions were reasonable, this Court concluded that they did not act in a negligent manner. Since claims arising under the FTCA require a showing of the defendant's negligence, in this case Calam and Cameron, this Court's dismissal of Plaintiffs' FTCA claims against the United States was also proper. Lastly, Plaintiffs' lack of service as to the state defendants, and their untimely and insufficient explanation at to such delay, warranted dismissal of the claims against them as well.

**Conclusion**

Based on the foregoing, Plaintiffs' motion for reconsideration is **DENIED**.

**IT SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of August, 2009.

> *S/Salvador E. Casellas*
> SALVADOR E. CASELLAS
> U.S. Senior District Judge